**STATE OF HAWAII**, Plaintiff–Appellee/Cross–Appellant, v. **TOM OKUDA**, Defendant–Appellant/Cross–Appellee

NO. 13988

(CR. NO. 87–0744)

JULY 5, 1990

PADGETT, ACTING C.J., AND INTERMEDIATE COURT OF APPEALS ASSOCIATE JUDGE TANAKA, IN PLACE OF LUM, C.J., RECUSED, CIRCUIT JUDGE SPENCER, IN PLACE OF HAYASHI, J., RECUSED, CIRCUIT JUDGE McCONNELL, IN PLACE OF WAKATSUKI, J., RECUSED, AND CIRCUIT JUDGE IBARRA, IN PLACE OF MOON, J., RECUSED

**Per Curiam.** Defendant–Appellant Tom Okuda (Defendant) was convicted by a jury of six counts of Fixing Tickets (Hawaii Revised Statutes (HRS) § 286–138(a) (1985)),[1] one count of Tampering with a Public Record (HRS § 710–1017(1)(b) (1985)),[2] and six counts of Unsworn Falsification to Authorities (HRS § 710–1063(1)(b) (1985)).[3] The trial court sentenced Defendant

---

[1]Hawaii Revised Statutes (HRS) § 286–138(a) (1985) provides as follows:

**Prohibiting "fixing" of tickets and providing penalties therefor; nolle prosequi by prosecuting attorney only by motion and approval of court.** (a) It shall be unlawful for any person, including any government official or employee of the State or county, to "fix", "void", change, modify, adjust, tamper with, or otherwise dispose of any traffic citation, notice, or summons. Nothing in this subsection shall be construed to affect the powers of the judges of the several courts in the exercise of their judicial functions. Any person who violates this subsection shall be fined not more than $1,000, or imprisoned for not more than one year, or both. Any government official or employee of this State or any county who violates any of the provisions hereof shall be summarily discharged from the official's or employee's office or employment.

[2]HRS § 710–1017(1)(b) (1985) provides as follows:

**Tampering with a public record.** (1) A person commits the offense of tampering with a public record if:

\* \* \*

(b) He knowingly presents or uses a written instrument which is or purports to be a public record or a true copy thereof, knowing that it has been falsely made, completed, or altered, or that a false entry has been made therein, with intent that it be taken as genuine[.]

[3]HRS § 710–1063(1)(b) (1985) provides as follows:

**Unsworn falsification to authorities.** (1) A person commits the offense of unsworn falsification to authorities if, with an intent to mislead a public servant in the performance of his duty, he:

to one year of probation on each count, to be served concurrently, imposed fines totaling $800, and required the performance of community service totaling 400 hours. The court also ordered him summarily discharged from his job pursuant to HRS § 286–138(a).

On appeal, Defendant contends that (A) the prosecution of Defendant was in violation of the doctrine of separation of powers; (B) there was insufficient evidence to support a conviction; (C) Defendant's conduct constituted a de minimis infraction of the offenses charged; (D) the trial court erred in allowing evidence of prior bad acts under the rubric of habit and custom; (E) in the absence of supporting evidence, the trial court erred in giving the jury instruction on accomplice liability; and (F) the trial court erred in discharging Defendant from his job as Deputy Administrative Director of the Courts.[4]

We hold that there was insufficient evidence to support the convictions of one count of Tampering with a Public Record and six counts of Unsworn Falsification to Authorities. Accordingly, we reverse those convictions. However, we affirm the convictions of six counts of Fixing Tickets and the sentences therefor, including the summary discharge of Defendant from his government job.

The State of Hawaii (State) cross–appeals, claiming that the trial court (A) abused its discretion in excluding the State's evidence of uncharged misconduct; (B) erred in merging the Tampering with a Public Record charges with the Unsworn Falsification to Authorities charges; and (C) erroneously concluded that HRS § 804–4 (Supp. 1989) mandated a stay of Defendant's sentence

---

\* \* \*

(b) Submits or invites reliance on any writing which he knows to be falsely made, completed, or altered[.]

[4] Defendant also contends that the trial court erred in ruling that the charges of Unsworn Falsification to Authorities did not merge with the charges of Fixing Tickets. Our reversal of the convictions of Unsworn Falsification to Authorities renders this contention moot.

pending appeal.[5] We hold that the issues raised by the State are moot and dismiss the cross–appeal.

## I. FACTS

### A.

In 1961, the Traffic Violations Bureau (TVB) was transferred from the Honolulu Police Department (HPD) to the Honolulu District Court. District Court Administrative Magistrate Millard White[6] appointed Defendant as the director of the TVB. Magistrate White established a system for the pre–arraignment disposition of traffic tickets when the recipient of the citation complained in person at the TVB. Under the system, Defendant would listen to the complaint and make a recommendation whether to cancel or modify the traffic citation, or to reduce the amount of the fine. Defendant would rubber–stamp the citation "Action by Court" and forward it to Magistrate White with a brief note about the circumstances of the citation and his recommended disposition. If approved, Magistrate White would sign and date the citation. The citation was then filed at the TVB.

Another system was developed for the disposition of citations where a citing police officer wished to withdraw the citation. The police officer would meet with Defendant and state his reasons for

---

[5] The State's cross–appeal was pursuant to HRS § 641–13(5) (1985) which provides:

> An appeal may be taken by and on behalf of the State from the district or circuit courts to the supreme court, subject to chapter 602, in all criminal cases, in the following instances:
>
> * * *
>
> (5) From a ruling on a question of law adverse to the State where the defendant was convicted and appeals from the judgment[.]

[6] Prior to January 1, 1972, district magistrates presided in district courts. Act 188, 1970 Haw. Sess. Laws 443, established district courts as courts of record and redesignated district magistrates as district judges.

the withdrawal. Defendant would fill out an affidavit with the officer's reasons and have the officer swear to and sign the affidavit. Both the citation and affidavit were then sent to Magistrate White for review and approval.

District Court Administrative Judge Frank Takao issued two directives addressing these procedures in 1976 and 1977. The directives provided that all citations voided or modified by an issuing officer must be accompanied by that officer's affidavit stating the reason for the adjustment. Judge Takao testified at trial that the circumstances he had in mind for recommendation of adjustment of bail amounts or cancellation of tickets were cases where a tree branch blocked a traffic sign or light, and not because the motorist was on welfare. Judge Takao stated that when Defendant received a complaint, he was supposed to check with the police officer who issued the ticket to determine whether the complaint was legitimate. If it was, that reason was to be put in the officer's affidavit. Under the established procedures, Defendant had a duty to inform the district judge of the reason for his recommendation for the adjustment or cancellation of a traffic ticket.

Successor Administrative Judge Russell Kono continued the procedures established by his predecessor. He testified that the 1976 and 1977 directives were meant to prevent the cancellation of traffic tickets without justification rather than to facilitate the cancellation of tickets.

B.

The evidence at trial disclosed the following TVB procedure. A traffic citation consists of five copies: one copy for the cited motorist, one copy for the issuing police officer, and three copies for processing by the TVB. The citation is logged into the court's computers at the TVB Data Processing Division (DP). One copy is

placed in a master file. The remaining two copies are sent to the cashier's section.

Two procedures were available to an issuing police officer who wanted to cancel a traffic citation. By general order, the officer was supposed to fill out HPD Form 168 setting forth the reason for the cancellation. Upon review and approval of the form by the officer's superior, it would be sent to the TVB. The TVB would fill out an affidavit indicating the reason for the cancellation taken from the Form 168, then call in the officer to sign the affidavit.

The other procedure, available to both police officers and civilians, entailed requesting cancellation at the TVB. All eight of the citations at issue in this case involved this method of cancellation. An officer or civilian would go to the TVB with a request or complaint regarding a citation. That person would either meet with Defendant or one of his clerks. Defendant generally met with the police officers. Most of the police officers testified that although they did not address the validity of the citation, Defendant placed a shorthand symbol for "affidavit" on the citation. The TVB clerks understood the symbol to mean that the citation was to be cancelled and that they were to prepare an affidavit for the issuing officer's signature. When the officer went to sign the affidavit, it would usually be blank. Sometimes the officer gave a reason for cancellation or often gave no reason, or would state "put the usual." Usually, the clerk would type in a false, concocted reason for the cancellation and the officer was not placed under oath to swear that the contents of the affidavit were true. Defendant's understanding was that his indication of "affidavit" on the citation was an instruction to his staff to prepare an affidavit with the officer's given reason for cancellation and that the affidavit would then be executed by the officer after he swore to the truth of its contents.

Explanations given for the cancellation of a citation were always accepted and there was no attempt to independently

determine the validity of the reasons given. Defendant never instructed the clerks regarding the reasons they were to insert in the affidavit. After the issuing officer signed the affidavit, TVB managing clerks Hanae Yasuda, Harriet Schimmelfenning, or Viola Kasparovitch would sign it for Defendant without reviewing the reasons for cancellation. Defendant did not review the contents of the affidavit.

The affidavit and citation were then sent to the DP division where the information was logged into the computer and a printout made. Defendant testified that the computer printout and bundled tickets first came to his office before being sent to the administrative district judge, but that he did not have time to look at "each and every one." 5/30/89 Transcript at 101–102. A district judge would review the printout and sign it. Generally, a judge would routinely approve the cancellation of a citation that was supported by an affidavit of the issuing officer.

## C.

The eight traffic tickets or citations involved in this case were issued to Nelson Higa (Higa), Shirley Hayashi (Hayashi), Ronald Medeiros (Medeiros), Roxanne Sprowl Scott (Scott), Judith Utterback Wasson (Wasson), John Roth (Roth), Lois Sprowl (Sprowl), and Michael Machado (Machado). All eight tickets were cancelled through the affidavit procedure.

Higa personally saw Defendant and complained that the citation he received was unjustified because the left turn sign was obscured by a traffic control signal. Concerning Machado's ticket, his friend who knew Defendant complained to Defendant that there was a problem with the speeding ticket issued to Machado. In each of the other six citations, a police officer who did not issue the ticket saw Defendant about cancelling the ticket. With respect to the tickets issued to Scott, Wasson, Roth, and Sprowl, Officer

Veal, a fellow church member, told Defendant that those cited were experiencing financial hardship. Each of the motorists' copies of the tickets (except that for Machado which was not introduced into evidence) bore Defendant's shorthand symbol for affidavit.

Each issuing officer testified he believed the ticket he issued was valid. Each was called in to sign an affidavit for the ticket he had issued. Most of the seven issuing officers (Officer Richardson had issued two of the tickets) could not remember if the affidavit was blank when they signed it. Officer Richardson, who cited Higa and Roth, did however testify that usually he would sign the affidavit without any discussion about the reason for the cancellation. Officer Medeiros signed an affidavit that was never filled in and testified that he was not asked about a reason for the cancellation.[7] Officer Eggersgluss, who cited Sprowl, could not recall signing the affidavit but recognized his signature and testified that it was standard procedure to be given a blank affidavit to sign. Officer Veal, who cited Machado, testified that he signed a blank affidavit. He also testified that he believes TVB clerk Amy Donlin told him that the cancellation was requested by Defendant and he thought he saw Defendant's symbol approving the cancellation of the ticket. Most of the officers testified that it was common practice to agree to cancel perfectly valid citations at the request of another officer unless there was a strong reason not to. Most also testified that they would not sign an affidavit unless the cancellation was approved by Defendant.

The jury returned guilty verdicts as to six counts of Fixing Tickets, seven counts of Tampering with a Public Record, and six counts of Unsworn Falsification to Authorities. The jury was

---

[7] The affidavit left blank was for Hayashi's ticket. Consequently, Defendant was not charged with Tampering with a Public Record and Unsworn Falsification to Authorities offenses for that ticket.

unable to reach a verdict as to two counts of Fixing Tickets (tickets issued to Higa and Machado) and one count of Unsworn Falsification to Authorities (ticket issued to Higa). The trial court declared a mistrial as to these counts.

On Defendant's motion regarding the merger of the offenses, the court held that Tampering with a Public Record was an offense included within the offense of Unsworn Falsification to Authorities. Therefore, on six of the traffic tickets where Defendant had been convicted of both offenses, the court dismissed the six counts of Tampering with a Public Record. Since the jury did not reach a verdict on the Unsworn Falsification to Authorities charge on the Higa ticket, the conviction on the Tampering with a Public Record charge for that ticket was allowed to stand.

After the entry of the judgment of conviction, Defendant timely appealed and the State cross–appealed.

## II. DEFENDANT'S APPEAL
### A.

Before, during, and after trial, Defendant sought the dismissal of all charges on the ground that the prosecution impermissibly interfered with the judiciary's decision–making function in violation of the separation of powers doctrine. Defendant's basic premise was that, with respect to the pre–arraignment disposition of traffic citations from which the charges arose, he was acting as a member of the judiciary branch and, as such, his conduct was not subject to control by the executive branch.

In ruling on Defendant's pretrial motion to dismiss, the trial court held that "[i]mplicit in the charges is the assumption that the powers of the judiciary has [sic] been clearly exceeded." Record, Vol. 5 at 114. We agree with the court's analysis and its denial of Defendant's motions to dismiss on the separation of powers ground.

HRS § 286–138(b) (1985), enacted in 1961, provides that no traffic violation charge "shall be stricken, amended, or reduced except by consent of the court upon written motion of the prosecuting attorney stating the reasons therefor."[8] In 1961, at a meeting of all state magistrates with Chief Justice Wilfred Tsukiyama, it was determined that, since a traffic ticket is not a charge, no nolle prosequi is necessary. Therefore, Chief Justice Tsukiyama stated that a magistrate may approve the modification or voidance of a "tag" if he knows the reason therefor. Accordingly, a procedure was established by the Honolulu District Court for the pre-arraignment disposition of traffic tickets as indicated above.

The Fixing Tickets charges, in essence, implied that Defendant acted outside the scope of his authority as a judiciary employee in the disposition of the eight traffic tickets by not adhering to the procedures established by the district judges. At trial, the central issue was not "the manner in which the Judiciary had decided on the disposition of eight traffic citations[,]" as Defendant claims. Rather, it was the manner in which Defendant failed to comply with the established procedures for the pre–arraignment cancellation of the traffic tickets. Based on the evidence, Defendant's breach of separation of powers claim is without merit.

Moreover, in an abundance of caution to maintain fairness, the trial court instructed the jury that Defendant could not be convicted of Fixing Tickets if his "actions constituted the use of the powers of the Judge or Judges, in the exercise of their judicial functions[.]" 6/2/89 Transcript at 69–70. The court also instructed the jurors

---

[8] HRS § 286–138(b) (1985) provides in its entirety as follows:

(b) No nolle prosequi shall be entered in any case involving a violation of the traffic laws or ordinances of the State or of the several counties and no such case or any charge arising therefrom shall be stricken, amended, or reduced except by consent of the court upon written motion of the prosecuting attorney stating the reasons therefor. The court may deny the motion if it deems the reasons insufficient.

that the defense of "execution of public duty" applied if Defendant reasonably believed that "his conduct [was] required or authorized to assist a public officer in the performance of his duties[.]" *Id.* at 75–76. Despite these instructions, the jury found Defendant guilty of six of the eight Fixing Tickets charges.

We hold that the prosecution of Defendant did not constitute a violation of the separation of powers principle.

### B.

Defendant contends that there was insufficient evidence that Defendant knew of the falsification of the police officers' affidavits which resulted in the cancellation of the traffic tickets involved in this case. We agree with respect to the Tampering with a Public Record and Unsworn Falsification to Authorities convictions. We disagree, however, regarding the Fixing Tickets convictions.

### 1.

The State is required to prove each element of an offense beyond a reasonable doubt. HRS § 701–114(a) (1985). Regarding both the Tampering with a Public Record (HRS § 710–1017(1)(b)) and Unsworn Falsification to Authorities (HRS § 710–1063(1)(b)) charges, an essential element of those offenses is that Defendant *knew* that the written instrument (the issuing officer's affidavit) *was falsely made or completed*. In our view, the State failed to prove this essential element beyond a reasonable doubt.

It is clear from the evidence that, with respect to the eight affidavits at issue, (1) Defendant did not tell the clerks, directly or indirectly, what reasons to put in the affidavits; (2) he did not tell the persons seeking cancellation of the tickets to tell the clerks anything; (3) the police officers who issued the tickets did not discuss

the reasons for cancellation with Defendant; (4) Defendant did not review or personally approve or sign the affidavits; and (5) Defendant testified that it was his belief that the clerks would insert in the affidavits the true reasons given by the officers issuing the tickets. Thus, there was no direct evidence that Defendant knew that the affidavits were falsely made or completed.

Nonetheless, the State asserts that "there was substantial evidence from which the jury could reasonably infer that, although the Defendant did not know the specific reasons the clerks put in the affidavits, those reasons were false." "[V]iewing the evidence in the light most favorable to the [S]tate," *State v. Tamura*, 63 Haw. 636, 637, 633 P.2d 1115, 1117 (1981), we do not believe there is substantial evidence that Defendant knew that the affidavits were falsely made or completed. From the evidence of general practice and procedure in the TVB, we cannot by a quantum leap arrive at a reasonable inference of Defendant's knowledge of falsity as to the eight affidavits involved in the case.

Accordingly, we conclude that the evidence was insufficient to support convictions for the Tampering with a Public Record and Unsworn Falsification to Authorities offenses.

2.

On the other hand, to support a conviction of Fixing Tickets, proof of Defendant's knowledge that the affidavits were falsely made and completed is unnecessary.

As the trial court instructed the jury, the essential elements of the Fixing Tickets offenses are:

First, defendant is a person, including a governmental official or employee of the State or County.

And, second, defendant fixed, voided, tampered with or otherwise disposed of;

Third, any of the eight traffic citations which are the subject of this case.

And fourth, he did so intentionally, knowingly or recklessly.

6/2/89 Transcript at 69. The court also gave the following instruction:

[A] person acts recklessly with respect to a result of his conduct when he consciously disregards a substantial and unjustifiable risk that his conduct will cause such a result.

A risk is substantial and unjustifiable if, considering the nature and the purpose of the person's conduct, and the circumstances known to him, the disregard of the risk involves a gross deviation from the standard of conduct that a law abiding person would observe in the same situation.

*Id.* at 74.

Upon a careful review of the record, we conclude that there is substantial evidence that Defendant was under a court directive to make recommendations as to the disposition of traffic citations, and was directed to submit such recommendations, with the citing officers' affidavits, in accordance therewith. There further is evidence that Defendant failed to ascertain the validity of the affidavits before inviting reliance thereupon by the district judges. A jury, on the record, could find that Defendant acted recklessly in this regard and, accordingly, could convict Defendant on the six counts of Fixing Tickets.

## C.

Defendant next contends that his conduct constituted a de minimis infraction of the Fixing Tickets offenses. We disagree.

HRS § 702–236(1) (1985)[9] permits a court to dismiss de minimis infractions of the law. Appellate review of the court's determination under this statute is based on the abuse of discretion standard. *State v. Park*, 55 Haw. 610, 617, 525 P.2d 586, 591–92 (1974).

Defendant asserts that he acted in good faith without evil intent and his conduct fell "within a customary license or tolerance" as set forth in HRS § 702–236(1)(a). He argues that the procedure of pre–arraignment cancellation of traffic tickets "was granted a customary license in order that the District Court could continue to operate."

The evidence, however, is contrary to Defendant's assertion. The district judges who approved the cancellations of the eight traffic tickets in question believed that the reasons set forth for the recommended cancellations were legitimate. There was no "customary license or tolerance" to justify the cancellation of the traffic tickets by falsifying the affidavits of officers who had issued those tickets.

Moreover, Defendant's conduct constituting the basis of the charges was not consistent with the purpose of the law defining the

---

[9]HRS § 702–236(1) (1985) provides as follows:

**De minimis infractions.** (1) The court may dismiss a prosecution if, having regard to the nature of the conduct alleged and the nature of the attendant circumstances, it finds that the defendant's conduct:

    (a) Was within a customary license or tolerance, which was not expressly refused by the person whose interest was infringed and which is not inconsistent with the purpose of the law defining the offense; or

    (b) Did not actually cause or threaten the harm or evil sought to be prevented by the law defining the offense or did so only to an extent too trivial to warrant the condemnation of conviction; or

    (c) Presents such other extenuations that it cannot reasonably be regarded as envisaged by the legislature in forbidding the offense.

offense, a requirement under HRS § 702–236(1)(a). When the legislature established the traffic point system (HRS § 286–128), it also made "fixing tickets" an offense under HRS § 286–138. Act 113, 1961 Haw. Sess. Laws 99. The purpose of the "fixing tickets" statute was "the administration and enforcement of the proposed point system *in a strict uniform manner without qualification.*" Sen. Stand. Comm. Rep. No. 904, in 1961 Senate Journal, at 981 (emphasis added). Thus, Defendant's conduct resulting in the tickets being cancelled was not consistent with the purpose of the "fixing tickets" statute. *Cf. State v. Vance,* 61 Haw. 291, 307, 602 P.2d 933, 944 (1979).

We therefore conclude that the trial court did not abuse its discretion in denying the dismissal of the Fixing Tickets charges on de minimis grounds.

### D.

Because of the volume of traffic tickets they handled and due to the passage of time, the TVB clerks, managing clerks, and police officers who testified generally were unable to recall the specifics of the eight tickets pertinent to this case. The trial court, however, permitted them to testify about the handling of other tickets in general as evidence of habit and routine practice under Hawaii Rules of Evidence (HRE) Rule 406.[10]

Defendant claims error because (1) the State failed to lay an adequate foundation to establish that the witnesses' testimony constituted evidence of habit, and (2) the evidence admitted under the

---

[10]Hawaii Rules of Evidence (HRE) Rule 406 provides as follows:

**Rule 406 Habit; routine practice.** Evidence of the habit of a person or of the routine practice of an organization, whether corroborated or not and regardless of the presence of eyewitnesses, is relevant to prove that the conduct of the person or organization on a particular occasion was in conformity with the habit or routine practice.

guise of habit was really evidence of prior bad acts "to prove the character of [Defendant] to show that he acted in conformity therewith." HRE Rule 404(b).[11] We find no error.

While the use of character evidence under HRE Rule 404 is stringently limited, "relevancy, in general, is the only limitation upon proof of habit or routine practice." 10 J. Moore & H. Bendix, *Moore's Federal Practice* ¶ 406.02, at IV–139 (2d ed. 1988). Also,

> [h]abit or routine practice may be proved by testimony in the form of an opinion or by specific instances of conduct sufficient in number to warrant a finding that the habit existed or that the practice was routine.

*Id.* The question whether repeated instances rise to the level of habit is "subject to the sound discretion of the trial judge." *Id.* at IV–140.

Applying the foregoing precepts, we hold that the trial court did not err in admitting the questioned evidence pursuant to HRE Rule 406. In our view, the trial court did not abuse its discretion in holding that the foundation was adequate in allowing testimony of habit, custom, and routine procedure. Moreover, the admitted evidence was relevant.

Defendant's claim that the testimony dealt with evidence of prior bad acts precluded by HRE Rule 404(b) is without merit. The trial court excluded most of the testimony concerning the acts of Defendant and other testimony deemed questionable on the basis of whether it actually dealt with habit, custom, or routine procedure. The admitted testimony generally concerned the habit or custom of the testifying police officers regarding the issuance of

---

[11] HRE Rule 404(b) provides in part as follows:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith.

traffic tickets and the signing of affidavits, and the routine proce-
dures of TVB clerks in the processing of tickets.

We find no error in the trial court's admission of the ques-
tioned testimony under HRE Rule 406.

E.

Over Defendant's objection, the trial court instructed the jury
as follows:

A person may be guilty of an offense if it is commit-
ted by his own conduct or by the conduct of another per-
son for which he is legally accountable or both.

A person is legally accountable for the conduct of
another person, when acting with the state of mind that is
sufficient for the commission of the offense, he causes an
innocent person to engage in conduct which violates the
law.

6/2/89 Transcript at 72. The instruction generally tracks HRS
§§ 702–221(1) and –221(2)(a) (1985).[12] During deliberation, the
jury inquired whether the instruction applied to all the offenses or
only to the Tampering with a Public Record offenses. The court
responded that the instruction applied to all counts.

Defendant contends that the court erred in giving the instruc-
tion since "there was no evidence that [he] manipulated an

---

[12]HRS §§ 702–221(1) and –221(2)(a) (1985) provide as follows:

**Liability for conduct of another.** (1) A person is guilty of an offense if
it is committed by his own conduct or by the conduct of another person for
which he is legally accountable, or both.

(2) A person is legally accountable for the conduct of another person
when:

(a) Acting with the state of mind that is sufficient for the commission
of the offense, he causes an innocent or irresponsible person to
engage in such conduct[.]

unwitting accomplice to commit any of the charged offenses[.]" He claims that "not a single police officer or TVB clerk who actually participated in cancelling the eight traffic citations by means of the TVB affidavit system was 'innocent.'" He therefore asserts that the giving of the accomplice liability instruction was "entirely unjustified by the evidence." We disagree.

> In our analysis of the issue, we start with the principle that [i]n determining whether there is evidence that will warrant an instruction, the court does not pass on the weight and sufficiency of the evidence. It is not error to submit an instruction covering a theory advanced by a party if there is any evidence on which to base it, although it might be slight and inconclusive, or opposed to the preponderance of the evidence. :

75 Am. Jur. 2d *Trial* § 652, at 610 (1974) (footnotes omitted). The question is whether there was any evidence indicating that Defendant intentionally, knowingly, or recklessly, caused any innocent person to engage in conduct which resulted in the violation of Fixing Tickets. The record indicates that there was.

This case is unlike a simple accomplice liability case of A causing a crime by an innocent B. Defendant concedes that, based on the evidence in this case, no ticket was "fixed" until its cancellation was approved by a district judge. After Defendant affixed his shorthand symbol for "affidavit" on the eight traffic tickets, the TVB clerks obtained false affidavits from the police officers who issued the tickets, the DP clerks then logged the information from the citation and affidavit into the computers, and finally, relying on the computer printouts, the district judges approved the cancellation of the eight tickets. Thus, there were intermediate actors between Defendant and the district judges.

In our view, if the evidence supported the fact that any one of the TVB clerks, the police officers who signed the affidavits, the DP clerks, and the district judges was "innocent," the giving of the

"innocent" accomplice liability instruction was not error. The evidence indicated, as Defendant claims, that the TVB clerks and police officers were not "'innocent' to the improprieties of the system." However, the evidence indicated that the DP clerks and the district judges were "innocent" persons within the meaning of the accomplice liability instruction.

At oral argument, Defendant's counsel argued that the district judge's conduct could not serve as a basis for the giving of the instruction because the judge did not engage in any "conduct which violates the law." We disagree.

HRS § 702–221(2)(a) deals, in part, with the problem of an innocent agent where a crime is committed. The statute "couples the state of mind of the defendant with the conduct he has caused another to perform and determines the defendant's liability accordingly." Commentary to HRS § 702–221. Under the statute, "[t]he defendant need not satisfy the objective elements of the substantive offenses; the point of the provision is to hold him legally accountable when he engages in conduct that causes an innocent . . . person to satisfy the objective requirements." Robinson & Grall, *Element Analysis in Defining Criminal Liability: The Model Penal Code and Beyond*, 35 Stan. L. Rev. 681, 733 (1983). Thus, under HRS § 702–221(2)(a), the innocent person merely engages in an overt behavior constituting an element of the offense and does not legally commit the offense itself.

The instruction given did not exactly follow the language of HRS § 702–221(2)(a). Instead of stating "he causes an innocent person to engage in such conduct," the instruction stated "he causes an innocent person to engage in conduct which violates the law." However, we do not deem the deviation in language to be fatal. Since a person cannot be innocent and be engaging in criminal conduct at the same time, the instruction logically meant "he causes an innocent person to engage in conduct which resulted in a violation of the law." The jurors were not misled by the

instruction. The jury could have found that Defendant caused the "innocent" district judges to approve the cancellation of the traffic tickets which resulted in violations of the Fixing Tickets law.

Accordingly, we conclude that Defendant was not prejudiced by the jury instruction in question.

## F.

Finally, Defendant contends that the trial court erred in imposing a sentence of dismissing him from his job as Deputy Administrator of the courts. We find no error.

With respect to penalties, HRS § 286–138(a) provides:

Any person who violates this subsection shall be fined not more than $1,000, or imprisoned for not more than one year, or both. Any governmental official or employee of this State or any county who violates any of the provisions hereof shall be summarily discharged from the official's or employee's office or employment.

Defendant claims that HRS § 286–138(a) does not specifically authorize a sentencing court to discharge a government employee from his job. He therefore argues that, as a civil service employee, Defendant may be discharged only pursuant to the civil service laws or, alternatively, that under the principle of separation of powers, he may be summarily discharged by the Chief Justice pursuant to his "executive" powers. Our short answer is that summary discharge from employment is a penalty mandated by HRS § 286–138(a), and the circuit courts are empowered to impose any penalty mandated by statute. *See* HRS § 603–21.5(2) (1985).[13] Also, with respect to a conflict between the Hawaii civil

---

[13] HRS § 603–21.5(2) provides as follows:

**General.** The several circuit courts shall have jurisdiction, except as otherwise expressly provided by statute, of:

service laws and HRS § 286–138(a), this court has stated that "[w]here a plainly irreconcilable conflict exists between a law of general application and law of specific application concerning the same subject matter, the specific authority will be favored." *State v. Greyson*, 70 Haw. 227, 235, 768 P.2d 759, 763–64 (1989). *Accord State v. Spencer*, 68 Haw. 622, 624, 725 P.2d 799, 800 (1986). Here, HRS § 286–138(a), the law of specific application, is the favored authority.

Defendant also challenges the penalty in question on the ground that HRS § 286–138(a) is void for vagueness or over-breadth in violation of the due process clause. We find no constitutional infirmity.

This court has stated that "'a penal statute should define the offense created with sufficient certainty to convey to a person of ordinary intelligence an adequate description of the evil intended to be prohibited.'" *State v. Albano*, 67 Haw. 398, 402, 688 P.2d 1152, 1155–56 (1984) (quoting *Territory v. Tam*, 36 Haw. 32, 37 (1942)). HRS § 286–138(a) clearly states that the "fixing," "voiding," changing, modifying, adjusting, tampering with, or disposing of in some other way, any traffic citation, notice, or summons by any person, other than by a judge in the exercise of his judicial function, will constitute an offense. In our view, the statute conveys "to a person of ordinary intelligence an adequate description of the evil intended to be prohibited."

Defendant also argues that HRS § 286–138(a) is facially "broad enough to encompass the 'disposal' of a traffic citation by a custodian or janitor without any criminal intent," thereby resulting in his being summarily discharged from his job. Defendant's fear is unwarranted. HRS § 286–138(a) must be read together with HRS § 702–204 (1985) which requires the State to prove that the

---

\* \* \*

(2) Actions for penalties and forfeitures incurred under the laws of the State[.]

custodian or janitor acted "intentionally, knowingly, or recklessly" with respect to each element of the offense.

Accordingly, the trial court did not err in summarily dismissing Defendant from his government job as a part of the sentence imposed.

## III. THE STATE'S CROSS–APPEAL

At oral argument, the State's counsel made the following statement:

The State's purpose of the cross–appeal is just to preserve the issues in the event of a reversal and a remand, and that's the purpose of this. The matters of course would be moot if the convictions were affirmed, and the State has already told the trial court it has no interest in retrying the mistrial counts which now are stayed.

In the disposition of Defendant's appeal, we are affirming the convictions of the Fixing Tickets counts and reversing the Tampering with a Public Record and Unsworn Falsification to Authorities counts. Nothing is being remanded for retrial. Consequently, based on the State's representation, the issues raised in its cross–appeal are moot.

## IV. CONCLUSION

The convictions of one count of Tampering with a Public Record and six counts of Unsworn Falsification to Authorities are reversed. The convictions of six counts of Fixing Tickets are affirmed. The State's cross–appeal is dismissed.

*Michael A. Weight* and *Rodney M. Fujiyama (Wallace S. Fujiyama* and *Ward F.N. Fujimoto* also on the briefs; Fujiyama, Duffy & Fujiyama, of counsel) for defendant–appellant/cross–appellee.

*Darwin L.D. Ching*, Special Deputy Prosecuting Attorney, for plaintiff–appellee/cross–appellant.