**STATE OF HAWAII,** Plaintiff–Appellee, v. **RON AKINA, JR.,** Defendant–Appellant

NO. 15192

(FC–CR. NO. 90–3584)

MARCH 23, 1992

LUM, C.J., PADGETT, HAYASHI, WAKATSUKI, AND MOON, JJ.

## OPINION OF THE COURT BY LUM, C.J.

Defendant–appellant Ron Akina, Jr. (defendant) appeals his conviction in the Family Court of the First Circuit for the offense of Custodial Interference in the Second Degree, in violation of Hawaii Revised Statutes (HRS) § 707–727(1)(a) (1985). Defendant argues that his conduct did not cause or threaten the harm or evil sought to be prevented by the custodial interference statute, and therefore, the court abused its discretion by failing to dismiss the case as de minimus under HRS § 702–236(1)(b) (1985). In addition, defendant challenges the validity of the custodial interference statute, asserting that § 707–727(1)(a) is unconstitutionally vague. Finally, defendant maintains that the court erroneously construed the provision because it convicted him under the facts of this case. We do not reach defendant's last two arguments, finding that the case should have been dismissed under § 702–236(1)(b) of the de minimus statute.

### I.

Sue Kinghorn (Sue) is a ward of the State who had run away from her group foster home on several occasions. She was on the run when she met defendant Ron Akina, Jr. on a rainy day at Swanzy Beach Park, near the home where defendant lived with his mother. Sue gave defendant a false name and told him she was nineteen years of age and pregnant. Defendant invited her to his home, and there, she was allowed to shower, and was fed. Sue stayed at the Akinas' for approximately two weeks, during which time defendant called Mr. and Mrs. Tuituku, her foster parents, informing them of Sue's whereabouts and giving them his name, address, and phone number. Sue returned to the Tuitukus' on Thanksgiving Day, 1990, after defendant requested that she return.

On the same day that Sue left his home, defendant called the Tuitukus to inquire about Sue and was told she had run away about an hour after her return. Sue returned home after Mrs. Tuituku

gave defendant permission to assist in the search, and he found Sue at Ala Moana Park. Then, early the next morning, Sue appeared once more on defendant's doorstep. Defendant drove her back to the Tuitukus', where he talked with the Tuitukus for about 45 minutes. He was told by Mr. Tuituku that Sue was a runaway and that it was a criminal offense to help runaways. The Tuitukus also stated that they could not physically restrain Sue if she chose to run away again and that the choice to leave was hers.

Defendant attempted to convince Sue to stay with the Tuitukus, and was unsuccessful. He then agreed to let her stay at his home until Sunday of the next week. Defendant and Sue left the premises, whereupon Mr. Tuituku called the police, and defendant was apprehended and charged with second degree custodial interference under HRS § 707–727(1)(a).

At trial, defendant testified that he was just trying to help Sue. Mr. Tuituku agreed, testifying that he felt defendant was a nice person who was sincerely trying to help. Even the prosecuting attorney conceded that defendant's pattern of behavior showed that he wanted to help Sue. The court concluded that "[d]efendant's main sin was being — or allowing himself to be taken advantage of."

## II.

The court below rejected defendant's assertion that § 702–236(1)(b) shielded him from prosecution, reasoning that defendant's actions fell within the terms of § 707–727(1)(a) and that a conviction would comply with legislative intent. We agree that defendant's actions and their effect fell within § 707–727(1)(a) and that defendant was not afforded protection under the exception in § 702–236(1)(b) for conduct that does not cause or threaten the "harm or evil sought to be prevented" by law. However, we find that the court abused its discretion by failing to dismiss the case under the § 702–236(1)(b) exception for conduct causing harm "too trivial to warrant the condemnation of conviction."

HRS § 702–236 provides in pertinent part:

(1) The court may dismiss a prosecution if, having regard to the nature of the conduct alleged and the nature of the attendant circumstances, it finds that the defendant's conduct:

. . . .

    (b) Did not actually cause or threaten the harm or evil sought to be prevented by the law defining the offense or did so only to an extent too trivial to warrant the condemnation of conviction . . . .

A court's decision under this statute is reviewed for an abuse of discretion. *State v. Okuda*, 71 Haw. 434, 448, 795 P.2d 1, 9 (1990). Generally, to constitute an abuse of discretion a court must have clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party litigant. *State v. Sacoco*, 45 Haw. 288, 292, 367 P.2d 11, 13 (1961).

Defendant contends that he is protected from prosecution under § 702–236(1)(b) because the legislative history of § 707–727(1)(a) shows that the statute was only intended to prevent child snatching, that is, interference of custody awarded upon divorce. We disagree. This court derives legislative intent primarily from the language of the statute and follows the general rule that in the absence of clear legislative intent to the contrary, the plain meaning of the statute will be given effect. *State v. Briones*, 71 Haw. 86, 92, 784 P.2d 860, 863 (1989). HRS § 707–727 provides:

(1) A person commits the offense of custodial interference in the second degree if:

    (a) He knowingly takes or entices a person less than eighteen years old from his lawful custodian, knowing that he has no right to do so[.]

This section makes it a crime to knowingly interfere with lawful custody of a child below the age of eighteen and is clearly intended to protect the interests of the minor and that of the minor's lawful custodian in the parent–child relationship. Its express terms would apply equally well to custodial arrangements arising from divorce, or to arrangements like the present one, which result from placement of a State ward. We find no evidence of clear legislative intent either in the statute or legislative history to limit application of the statute to the divorce context. We also find that there may be situations outside of that context where application of this statute would protect a minor and her lawful custodian, and thus, further legislative intent. We conclude that § 707–727(1)(a) is not limited to custody arising from divorce and that defendant cannot, through definition of the offense, alone, take advantage of the exception in § 702–236(1)(b) for conduct that does not fall within the terms of the statute under which defendant was prosecuted.

In addition, defendant would be unable to claim that his actions did not actually cause the harm or evil to be prevented, because by giving Sue transportation and a place to stay, his actions did interfere with the Tuitukus' custody of Sue, assisting, and to an extent, encouraging Sue to leave her home. We find, however, that his interference was too trivial to warrant the condemnation of conviction, and that defendant is provided a shield against prosecution in the § 702–236(1)(b) exception for conduct with de minimus effects.

When defendant came on the scene, there was little he could do to worsen Sue's relationship with her custodial parents. Sue had already run away from the Tuitukus several times before, and the Tuitukus themselves admitted that they had no control over her. It is also clear from the record that there was little or no communication between Sue and her parents. Defendant's actions did not cause the rift between Sue and her parents, and it is unlikely that his actions altered the existing custodial relationship at all.

Indeed, it appears that defendant was not the active party in this case, and that it was Sue that took advantage of defendant.

Given the evidence before the court below, and the court's own admission that defendant's "main sin was being — or allowing himself to be taken advantage of," we conclude that the court's failure to apply § 702–236(1)(b) to relieve defendant from prosecution under § 707–727(1)(a) was an abuse of discretion.

### III.

Defendant's conviction is reversed, and the charge against him is dismissed.

*Susan Arnett* (*Theodore Y.H. Chinn*, on the brief; *Glenn J. Kim*, Defender Intern, assisting on the brief), Deputy Public Defenders, for defendant–appellant.

*James M. Anderson,* Deputy Prosecuting Attorney, for plaintiff–appellee.