911 P.2d 95

**STATE of Hawai'i, Plaintiff–Appellee,**

v.

**Orestus CAVNESS, Defendant–Appellant.**

**No. 16773.**

Intermediate Court of Appeals of Hawai'i.

Jan. 23, 1996.

As Amended March 6, 1996.

Emmett E. Lee Loy, Deputy Public Defender, on the opening brief (Susan Lynn Arnett, Deputy Public Defender, on the reply brief), Honolulu, for defendant-appellant.

Loren J. Thomas, Deputy Prosecuting Attorney, City and County of Honolulu, on the brief, Honolulu, for plaintiff-appellee.

Before BURNS, C.J., WATANABE and KIRIMITSU, JJ.

BURNS, Chief Judge.

Defendant Orestus Cavness (Cavness) appeals the December 7, 1992 Judgment of the District Court of the First Circuit, convicting Cavness of Criminal Trespass in the Second Degree, Hawai'i Revised Statutes (HRS) § 708–814(1)(b) (1985),[1] and suspending sentence for six months on the condition that Cavness not violate any criminal statutes or ordinances of the City and County of Honolulu.

We vacate the December 7, 1992 Judgment and remand for a new trial.

## FACTS

In 1957, Cavness and others purchased a parcel of land at 1130 Smith Street in downtown Honolulu. It then had one or more buildings on it. Cavness operated a barber shop in one of the buildings and spent much of his time developing and promoting the property. However, on July 29, 1986, the City and County of Honolulu sold the land and building(s) (collectively, the property) at a Sheriff's sale to satisfy real property tax liens on the property. In October 1989, the Land Court issued Transfer Certificate of Title No. 338,026 to husband and wife Ching I. Wang (Ching) and Hai Tou Pan (Hai). Judicial decisions confirmed the ownership of the property by Ching and Hai.[2] In July 1992, there was only one building on the land and it was unoccupied. The part of the land not covered by the building was being used as a parking lot. Ching and Hai, through their attorney, made arrangements to demolish the building to provide more parking space.

On July 25, 1992, at approximately 8:30 in the morning, as the demolition company commenced demolition of the building, Cavness went to the site to try to prevent the demolition. Upon arrival at the site, Cavness stood in front of a backhoe in an attempt to stop the equipment operator from proceeding. Upon being asked by the attorney representing Ching and Hai to voluntarily leave the premises, Cavness spoke of the litigation and the facts that he had spent twenty-five years of his life developing the property, the property was all that he had, and he did not want it torn down. Police subsequently spoke

---

1. Hawai'i Revised Statutes (HRS) § 708–814(1)(b) (1985) reads in pertinent part as follows:

   (1) A person commits the offense of criminal trespass in the second degree if:

   \* \* \* \* \* \*

   (b) He enters or remains unlawfully in or upon commercial premises after reasonable warning or request to leave by the owner or lessee of the commercial premises or his authorized agent or police officer[.]

2. We take judicial notice of the following appellate opinions:

   On May 31, 1989, in appeal No. 13355, we entered a memorandum opinion vacating the circuit court's summary judgment deciding who were the parties entitled to the $70,209.11 surplus proceeds from the real property tax foreclosure sale conducted by the City and County of Honolulu. The opinion discusses in detail the titleholders' interests in the property and in a joint venture agreement relating to the property.

   On November 15, 1991, in appeal Nos. 14945 and 15041, we entered a memorandum opinion dismissing for mootness an appeal by defendants Cavness and Texhaw, Inc., of a circuit court decision dismissing the case. The case was an interpleader action brought by Richard Sau Hung Wong (Wong). Wong had bought the property at a tax foreclosure sale conducted by the City on July 29, 1986 and was a predecessor in title to Ching and Hai. Certificate of Title No. 309,227 had been issued to Wong on February 22, 1988. Wong sought a judicial determination whether Cavness and Texhaw, Inc., had the right to redeem the property from him. We concluded that the appeal was moot because Cavness' and Texhaw, Inc.'s right of redemption, if any, was not noted on the certificates of title issued subsequent to the tax foreclosure sale and, therefore, could not be enforced against the subsequent owners of the property.

   On November 15, 1991, in appeal No. 14901, we entered a memorandum opinion affirming the district court's writ of summary possession of the property in favor of Ching I. Wang and Hai Tou Pan and against Orestus Cavness and others.

with Cavness for approximately fifteen to twenty minutes in an effort to have Cavness leave the premises without further incident. When Cavness told the police that he would not leave the premises, he was arrested.

At trial, Cavness testified in relevant part as follows:

> Q BY MR. GRAVEN: Okay. How did—why specifically did you appear there that morning?
>
> \*    \*    \*    \*    \*    \*
>
> A Because, because we had ongoing litigation in court pertaining to this building; and I had heard—in fact I had checked with the building department and I had discovered that demolition permit had been issued. And I was down there to try and prevent them from carrying out the demolition of the building located at 1130 Smith Street.
>
> Q BY MR. GRAVEN: And why were you doing that?
>
> A 'Cause that was my place—
>
> \*    \*    \*    \*    \*    \*
>
> A Because that was my, not only my residence, but my place of business, as indicated on my identification card, 1130 Smith Street.

After not allowing Cavness to introduce evidence of the basis of his belief that he had a right to be on the premises, the district court orally decided in relevant part as follows:

> Mr. Cavness may still have a belief that he owns the property, but I don't—I think that is not within reason, but he harbors his belief. In fact, he is unwilling to accept the decisions of the courts of this State.
>
> And, therefore, the Court finds that the defense of mistake of fact is totally wanting in this case.

## DISCUSSION

In this appeal, Cavness contends that the trial court: (1) violated his right to due process when it excluded evidence relevant to his state of mind; (2) applied the wrong legal standard when it imposed a "reasonableness" requirement on his mistake of fact defense; (3) improperly refused to dismiss the charge as *de minimis;* and (4) erroneously concluded that there was sufficient evidence to establish the "commercial" nature of the premises in question. We consider each of these contentions in turn.

### A.

### *Evidence Proving the State of Mind Material*

### *Element Disproves the Mistake of Fact Defense*

According to HRS § 702–205 (1993), the elements of an offense are

> such (1) conduct, (2) attendant circumstances, and (3) results of conduct, as:
>
> (a) Are specified by the definition of the offense, and
>
> (b) Negative a defense (other than a defense based on the statute of limitations, lack of venue, or lack of jurisdiction).

In order to be found guilty of an offense, a person must have "acted intentionally, knowingly, recklessly, or negligently, as the law specifies, with respect to each element of the offense." HRS § 702–204 (1993). If the law fails to specify the state of mind required to establish an element of an offense, "that element is established if, with respect thereto, a person acts intentionally, knowingly, or recklessly." *Id.*

■ In this case, Cavness was charged with committing the offense of Criminal Trespass in the Second Degree, which is defined in HRS § 708–814(1)(b), in relevant part, as follows:

> (1) A person commits the offense of criminal trespass in the second degree if:
>
> \*    \*    \*    \*    \*    \*
>
> (b) The person enters or remains unlawfully in or upon commercial premises after reasonable warning or request to leave by the owner or lessee of the commercial premises or the owner's or lessee's authorized agent or police officer[.]

A person " 'enters or remains unlawfully' in or upon premises when the person is not

licensed, invited, or otherwise privileged to do so." HRS § 708–800 (1993). Since no state of mind is specified in HRS § 708–814(1)(b), the statute defining the Criminal Trespass in the Second Degree offense, the "intentionally, knowingly, or recklessly" state of mind applies. HRS § 702–204. Therefore, the offense is established only upon proof, beyond a reasonable doubt, that the defendant: (1) intentionally, knowingly, or recklessly [3] (2) entered or remained (3) without license, invitation, or privilege (4) in or upon commercial premises (5) after a reasonable warning or request to leave (6) by the owner or lessee of the commercial premises or the owner's or lessee's authorized agent or police officer.

Because Cavness asserted the mistake of fact defense, the State was also required to negative the defense.[4] This defense is set forth in HRS § 702–218 and provides:

**Ignorance or mistake as a defense.** In any prosecution for an offense, it is a defense that the accused engaged in the prohibited conduct under ignorance or mistake of fact if:

(1) The ignorance or mistake negatives the state of mind required to establish an element of the offense; or

(2) The law defining the offense or a law related thereto provides that the state of mind established by such ignorance or mistake constitutes a defense.

As originally proposed to the legislature, HRS § 702–218 (section 218 of the Proposed Draft of the Code) provided for a combined ignorance or mistake of fact or law defense.[5] Although the mistake of law defense was subsequently deleted from section 218 by the legislature, the Commentary on the original proposal is still helpful in shedding some light on the rationale for the mistake of fact defense. The Commentary explains that the reason ignorance or mistake of fact is a defense is that it negatives the existence of a mental state essential to the commission of the crime:

This section states the logical concomitant of the requirement that to establish each element of an offense a certain state of mind with respect thereto must be proven. Thus, if a person is ignorant or mistaken as to a matter of fact ... the person's ignorance or mistake will, in appropriate circumstances, prevent the person from having the requisite culpability with respect to the fact ... as it actually exists. For example, a person who is mistaken (either reasonably, negligently, or recklessly) as to which one of a number of similar umbrellas on a rack is the person's and who takes another's umbrella should be afforded a defense to a charge of theft predicated on either intentionally or knowingly taking the property of another. Also, a person, mistaken as to the effect of a divorce decree erroneously purporting to sever the marital ties of his wife, who marries another woman should not be convicted of bigamy if bigamy requires knowledge by the defendant of the defendant's

---

**3.** These terms are defined in HRS § 702–206 (1993).

**4.** HRS § 701–115 (1993) states in relevant part as follows:

**Defenses.** (1) A defense is a fact or set of facts which negatives penal liability.

(2) No defense may be considered by the trier of fact unless evidence of the specified fact or facts has been presented. If such evidence is presented, then:

(a) If the defense is not an affirmative defense, the defendant is entitled to an acquittal if the trier of fact finds that the evidence, when considered in the light of any contrary prosecution evidence, raises a reasonable doubt as to the defendant's guilt[.]

**5.** The legislature amended section 218, as initially proposed, to eliminate ignorance or mistake of

law as a defense. Supplemental Commentary on HRS § 702–218; Conference Comm.Rep. No. 2, 1972 Senate Journal at 741. However, the legislature did provide for an affirmative defense based on ignorance or mistake of law in those limited circumstances where "the defendant acts in reasonable reliance on an official statement of the law afterwards determined to be erroneous. In such cases, the defendant's conduct is consistent with law-abidingness." Commentary on HRS § 702–220.

In this case, Cavness has not alleged that the HRS § 702–220 defense of mistake of law applies, and based on our review of the record, we conclude that it does not. The question whether Cavness acted without license, invitation, or privilege is a question of law. The question whether he intentionally, knowingly, or recklessly acted without license, invitation, or privilege is a question of fact.

existing marital status. A reckless mistake would afford a defense to a charge requiring intent or knowledge—but not to an offense which required only recklessness or negligence. Similarly, a negligent mistake would afford a defense to a charge predicated on intent, knowledge, or recklessness—but not to an offense based on negligence.

\* \* \* \* \* \*

Previous Hawaii [Hawai‘i] law recognized a defense based on ignorance or mistake of fact or law, but usually the law required that the ignorance or mistake be reasonable. The Code correlates the culpability required for commission of the offense with the culpability which will deprive ignorance or mistake of effect as a defense.

(Footnotes omitted.) *See* Commentary on HRS § 702–218.

The interrelationship between the requisite state of mind to establish an offense and to negative the mistake of fact defense is also described in the Commentary on HRS § 702–205, the statutory provision defining "elements of an offense": [6]

The effect of including within the definition of "element" facts ... which negative a defense on the merits ... is to postulate an equivalence of the state of mind required to establish a particular offense regardless of the diverse circumstances giving rise to the charge. Thus, if the crime of murder requires that the defendant act intentionally or knowingly with respect to each element, one who intentionally kills another, recklessly mistaken that the other's conduct threatens one's life, would not be guilty of murder, although one might be guilty of a crime requiring only recklessness. Since the defendant must act inten-

tionally or knowingly with respect to attendant circumstances which negative the defense of self-defense, conviction for murder would fail unless it could be proven that defendant knew or believed that the defendant's assailant's conduct did not in fact threaten serious bodily harm or death.

As discussed earlier, the mental state of mind required for culpability of the offense of Criminal Trespass is intentionally, knowingly, or recklessly. Similarly, Cavness' mistake of fact defense would fail if his mistaken belief that he had a right to be on the premises was intentional, knowing, or reckless. On the other hand, Cavness would have a viable mistake of fact defense if it were established that he negligently believed that he had a right to be on the premises.

■ After not allowing Cavness to introduce evidence of the basis of his belief that he had a right to be on the premises, the district court found that Cavness actually, but unreasonably, believed that he had a right to be on the premises. A finding that Cavness actually believed that he had a right to be on the premises is an implicit finding that Cavness did not intentionally or knowingly act without license, invitation, or privilege. A man who actually believes that he is acting with license, invitation, or privilege does not intentionally or knowingly act without license, invitation, or privilege. However, the district court failed to answer the question whether the State proved that Cavness recklessly acted without license, invitation, or privilege.

HRS § 702–206 (1985) [7] states in relevant part as follows:

**Definitions of states of mind.**

\* \* \* \* \* \*

(3) "Recklessly."

---

**6.** The Supplemental Commentary on HRS § 702–205 points out that although the legislature adopted the proposed draft of HRS § 702–205 without change, the legislature did depart from the proposed code when it enacted HRS chapter 703, dealing with defenses of justification. Specifically, the legislature required an objective assessment of a defendant's state of mind, or a "reasonable belief" on the defendant's part, as to the attendant circumstances which would justify conduct otherwise deemed unlaw-

ful. Because of this departure, the Supplemental Commentary suggests that the example contained in the Commentary on HRS § 702–205, quoted in the text above, may no longer be applicable. Since the defense of mistake of fact is not a justification defense under HRS chapter 703, however, we believe that the example is relevant to this case.

**7.** This section was revised in 1993.

(a) A person acts recklessly with respect to his conduct when he consciously disregards a substantial and unjustifiable risk by engaging in such conduct.

. . . .

(d) A risk is substantial and unjustifiable within the meaning of this section if, considering the nature and purpose of the person's conduct and the circumstances known to him, the disregard of the risk involves a gross deviation from the standard of conduct that a law-abiding person would observe in the same situation.

■ An unreasonable belief may or may not be a reckless belief. Recklessness occurs when the person consciously disregards a substantial and unjustifiable risk. The question is whether Cavness consciously disregarded a substantial and unjustifiable risk that his belief that he was acting with license, invitation, or privilege was wrong. The district court's denial of Cavness' right to establish that he did not act intentionally, knowingly, or recklessly without license, invitation, or privilege, and its failure to decide whether Cavness acted recklessly without license, invitation, or privilege cause us to vacate the judgment and remand for a new trial.

### B.

Cavness argues that "the record is devoid of any evidence to show retail sales activity was occurring on the day of his arrest, and therefore, insufficient evidence to find that he was on commercial premises as required by HRS Section 708–814(1)(b)." We disagree.

The HRS does not define the phrase "commercial premises[.]" Thus, HRS § 701–104 (1985) applies. It states as follows:

**Principles of construction.** The provisions of this Code cannot be extended by analogy so as to create crimes not provided for herein; however, in order to promote justice and effect the objects of the law, all of its provisions shall be given a genuine construction, according to the fair import of the words, taken in their usual sense, in connection with the context, and with reference to the purpose of the provision.

*Black's Law Dictionary 245 (5th ed. 1979)* defines "commercial property" as "[i]ncome producing property (*e.g.,* office buildings, apartments, etc.) as opposed to residential property."

■ On appeal of a conviction after a bench trial, the test to ascertain the legal sufficiency of the evidence is whether, viewing the evidence in the light most favorable to the State, there is substantial evidence to support the conclusion of the trier of fact. *State v. Sanchez,* 9 Haw.App. 315, 322, 837 P.2d 1313, 1317 (1992).

■ Substantial evidence is credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion. *State v. Reed,* 77 Hawai'i 72, 81–82, 881 P.2d 1218, 1227–28 (1994).

The Hawai'i Supreme Court has "long held that evidence adduced in the trial court must be considered in the strongest light for the prosecution when the appellate court passes on the legal sufficiency of such evidence to support a conviction[.]" *State v. Batson,* 73 Haw. 236, 248, 831 P.2d 924, 931 (1992). And as trier of fact, the trial judge is free to make all reasonable and rational inferences under the facts in evidence, including circumstantial evidence. *Id.*

■ Based on substantial evidence, the district court found that the property was a "commercial premises" protected by HRS § 708–814(1)(b). This finding is not clearly erroneous. At the time of Cavness' arrest, the undeveloped portion of the land at issue contained a parking lot operated by the lessee of the property. Although there was no commercial enterprise being conducted in the vacant building, it had been used, prior to demolition, as a barber shop. The property was zoned for business or commerce. The building was being demolished for the business purpose of expanding the parking lot. The demolition company was in the process of demolishing the building.

The district court concluded that "the fact that in fact commercial activity was not being carried on at the time is totally irrelevant." We agree.

Cavness further contends that the specific harm or evil sought to be prevented by HRS § 708–814(1)(b) was trespassing in a retail store and harassing or inconveniencing customers or causing a loss of sales. We agree that was the motivation expressed in House Standing Committee Report No. 984 (1979) for upgrading the penalty for a violation of HRS § 708–814(1)(b) from a violation to a petty misdemeanor. However, there is no evidence of a legislative intent to limit the coverage of the statute to such situations.

## C.

■ Cavness contends that the trial court erred when it did not dismiss the charge as being *de minimis* pursuant to HRS § 702–236(1)(b) (1985). The abuse of discretion standard of review is applicable. *State v. Akina*, 73 Haw. 75, 828 P.2d 269 (1992). We decide that the district court did not abuse its discretion.

HRS § 702–236 (1985) states as follows:

**De minimis infractions.** (1) The court may dismiss a prosecution if, having regard to the nature of the conduct alleged and the nature of the attendant circumstances, it finds that the defendant's conduct:

(a) Was within a customary license or tolerance, which was not expressly refused by the person whose interest was infringed and which is not inconsistent with the purpose of the law defining the offense; or

(b) Did not actually cause or threaten the harm or evil sought to be prevented by the law defining the offense or did so only to an extent too trivial to warrant the condemnation of conviction; or

(c) Presents such other extenuations that it cannot reasonably be regarded as envisaged by the legislature in forbidding the offense.

(2) The court shall not dismiss a prosecution under subsection (1)(c) of this section without filing a written statement of its reasons.

Evidence that he interfered with the scheduled lawful demolition of the building contradicts Cavness' contention. He refused to leave the property when asked to leave voluntarily by both the landowners' agent as well as the police officers called to the scene. He left the police no alternative but to arrest him in order to stop his interference.

## CONCLUSION

Accordingly, we vacate the district court's December 7, 1992 Judgment and remand for a new trial.

KIRIMITSU, Judge, concurring and dissenting.

I agree with sections B and C of the majority opinion. However, I respectfully dissent from section A of the opinion for the reasons set forth below. I believe the dispositive issue is whether the district court properly rejected Cavness' affirmative defense of a mistaken belief that he had a legal right to remain on the property. Although the district court referred to Cavness' defense as a mistake of fact, I view his defense as a mistaken belief of law. Regardless of the reasons or basis for Cavness' mistaken belief of law, neither Hawai'i Revised Statutes (HRS) § 702–218 (1993) nor HRS § 702–220 (1993) provides a statutory defense for Cavness.

The legislative history of HRS §§ 702–218 and 702–220 indicates that the Hawai'i legislature intended, *inter alia*, to abolish the ignorance or mistake of law defense. By recognizing Cavness' defense as a mistake of fact permissible under HRS § 702–218, the majority is acting contrary to legislative intent.

HRS § 701–105 (1993) provides: "The commentary accompanying this [Hawai'i Penal Code] shall be published and may be used as an aid in understanding the provisions of this Code, *but not as evidence of legislative intent*." (Emphasis added.) The Hawai'i legislature adopted this commentary primarily from the Judicial Council of Hawai'i's proposed draft of the Hawai'i Penal Code (1970).[1]

1. *See* HRS § 701–105 (1985) (providing that  "[t]he commentary accompanying *the Judicial*

Accordingly, the commentary to the Hawai'i Penal Code is not evidence of legislative intent. The commentary indicates, at best, the intent of the judicial council who drafted the *proposed* penal code and not the intent of the legislature who later amended the *proposed* code before codifying it.[2] *See, e.g.,* Judicial Council of Hawai'i, *Hawai'i Penal Code (Proposed Draft)* 40 (1970); Commentary to HRS § 702–218 (1993).

For example, the proposed draft of HRS § 702–218 provided originally:

> In any prosecution for an offense, it is a defense that the accused engaged in the prohibited conduct under ignorance or mistake of fact *or law* if:
>
> (1) the ignorance or mistake negatives the state of mind required to establish an element of the offense; or
>
> (2) the law defining the offense or a law related thereto provides that the state of mind established by such ignorance or mistake constitutes a defense.

*Hawai'i Penal Code (Proposed Draft)* at 40 (emphasis added). When the legislature enacted HRS § 702–218, it adopted verbatim: (1) the above proposed text except for "or law" that was intentionally deleted, *see* Hse. Spec.Comm.Rep. No. 2, in 1972 House Journal, at 1065 and Sen.Spec.Comm.Rep. No. 6, in 1972 Senate Journal, at 684; and (2) the

commentary to the above proposed draft, *see Hawai'i Penal Code (Proposed Draft)* at 40. While the commentary to HRS § 702–218 may indicate the judicial council's intent behind the proposed draft to HRS § 702–218, the commentary does not reflect the subsequent amendment codified in HRS § 702–218 (1993) and, therefore, is misleading.

Before adopting the proposed draft of HRS §§ 702–218 and –220, the legislature:

> amend[ed] Section 218 [as indicated above[3]] and ... delete[d] Section 220(1)[4] to eliminate ignorance or mistake of law as a defense in certain instances, thereby avoiding a major dilemma with respect to enforcement of provisions of this Code. The defenses of ignorance of the law afforded by Sections 218 and 220 would have been available, to a degree, under any given set of circumstances and as such would have constituted a major encumbrance to enforcement of the substance and spirit of the Code.

Hse.Conf.Comm.Rep. Nos. 1, 2, in 1972 House Journal, at 1035, 1041. *See* Sen. Conf.Comm.Rep. Nos. 1, 2, in 1972 Senate Journal, at 734, 741. By amending the proposed draft of HRS §§ 702–218 and –220, the legislature eliminated generally the ignorance or mistake of law defense in order that

---

Council of Hawai'i's proposed draft of the Hawai'i Penal Code (1970), as revised, shall be published and may be used as an aid in understanding the provisions of this Code, but not as evidence of legislative intent." ) (Emphasis added.) The legislature later amended HRS § 701–105 by replacing the above emphasized text and with the words "this Code." *See* 1986 Haw.Sess.Laws Act 314, § 2 at 594.

2. As distinguished from the commentary, the supplemental commentary "*attempts* to explain the changes that were made by the Legislature to the Proposed Draft of the Hawai'i Penal Code (1970)[.]" (Emphasis added.) Commentary to HRS § 701–105 (1993). However, neither the regular nor supplemental commentary is or should be evidence of legislative intent.

3. As opposed to the regular commentary, the supplemental commentary on HRS § 702–218 (1993) recognizes this amendment. *Cf.* Commentary to HRS § 702–218 (1993).

4. The proposed draft of HRS § 702–220 provided:

In any prosecution, it shall be an affirmative defense that the defendant engaged in the conduct or caused the result alleged under the belief that the conduct or result was not legally prohibited when:

*(1) the statute or other enactment defining the offense is not known to the defendant and has not been reasonably made available to him, by publication or otherwise, prior to the conduct or result alleged; or*

(2) he acts in reasonable reliance upon an official statement of the law, afterward determined to be invalid or erroneous, contained in:

(a) a statute or other enactment;

(b) a judicial decision, opinion, or judgment;

(c) an administrative order or administrative grant of permission; or

(d) an official interpretation of the public officer or body charged by law with responsibility for the interpretation, administration, or enforcement of the law defining the offense. *Hawai'i Penal Code (Proposed Draft)* at 41–42 (emphasis added).

both sections better reflect the legal maxim, ignorance of the law excuses nobody.[5]

Therefore, I would affirm the conviction and the December 7, 1992 Judgment because in my view the district court did not err in rejecting Cavness' mistake of law defense.

**5.** We note that, in *State v. Marley*, 54 Haw. 450, 476, 509 P.2d 1095, 1111 (1973), the Hawai'i Supreme Court stated that "[a] reasonable mistake of law is often a complete defense to the charges of criminality for an act when the mistake of law negatives a mental state which must be shown to establish a material element of the crime." (Citations omitted.) However, *Marley* dealt with an offense that occurred on May 14, 1971, prior to the enactment of the Hawai'i Penal Code, effective January 1, 1973. *See id.* at 476, 509 P.2d at 1099; 1972 Haw.Sess.Laws Act 9, § 1 at 32. As a consequence of the enactment of the Hawai'i Penal Code, the Hawai'i legislature has restructured significantly the mistake of fact and mistake of law defenses in Hawai'i.