**Electronically Filed**
**Intermediate Court of Appeals**
**CAAP-25-0000006**
**28-JAN-2026**
**08:36 AM**
**Dkt. 102 SO**

NO. CAAP-25-0000006

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

STATE OF HAWAI'I, Plaintiff-Appellee/Cross-Appellant,
v.
ALVIN TRAN, Defendant-Appellant/Cross-Appellee

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CASE NO. 1CPC-20-0000890)

## SUMMARY DISPOSITION ORDER
(By: Leonard, Presiding Judge, Wadsworth and Guidry, JJ.)

Defendant-Appellant/Cross-Appellee Alvin Tran (**Tran**) appeals from the Circuit Court of the First Circuit's (**circuit court**) December 10, 2024 "Judgment of Conviction and Sentence" (**Judgment**).[1] Plaintiff-Appellee/Cross-Appellant State of Hawai'i (**State**) cross-appeals from the circuit court's ruling on a question of law adverse to the State, pursuant to Hawaii Revised Statutes (**HRS**) § 641-13(5) (2016).

---

[1]     The Honorable Catherine H. Remigio presided.

On July 24, 2020, the State charged Tran by Indictment, alleging that Tran committed "Continuous Sexual Assault of a Minor Under the Age of Fourteen Years" in violation of HRS § 707-733.6 (2014).  A jury found Tran guilty as charged. The circuit court sentenced Tran to a twenty-year term of imprisonment.  Tran appealed, and the State cross-appealed.

Tran raises multiple points of error on appeal, contending that: (1) "[t]he circuit court reversibly erred by not engaging in a colloquy with Tran to ensure that he intelligently, knowingly, and voluntarily waived his right to cross-examine [the complaining witness (**CW**)]"; (2) "[t]rial counsel provided Tran with ineffective assistance of counsel by not cross-examining [CW]"; (3) "[t]he circuit court reversibly erred in instructing the jury . . . that the charged offense's attendant circumstances element of the minor's age was a strict liability element that did not require any mens rea"; (4) "[t]he circuit court plainly erred in allowing the jury to consider Dr. [Kayal] Natarajan's [(**Dr. Natarajan**)] testimony (in its entirety), and Dr. [Alex] Biven[s' (**Dr. Bivens**)] testimony (also in its entirety), because their testimony established its own irrelevancy"; (5) "[t]he circuit court . . . plainly erred by not qualifying the defense expert, [Tristan Wristen (**Nurse Wristen**)], as an expert in front of the jury"; and (6) the

prosecutor committed prosecutorial misconduct in her opening, closing, and rebuttal statements.  (Citations omitted.)

The State's cross-appeal raises one point of error, contending that "[t]he circuit court erred by concluding [Tran's] statements to the [CW] . . . required a separate determination of voluntariness under HRS § 621-26."

Upon careful review of the record, briefs, and relevant legal authorities, and having given due consideration to the arguments advanced and the issues raised by the parties, we resolve Tran and the State's points of error as follows:

## I.    Tran's Points of Error[2]

(1) Tran contends the circuit court erred by not conducting a colloquy to determine whether Tran waived his right to cross-examine the CW.  We review constitutional questions under the right/wrong standard.  State v. Fields, 115 Hawai'i 503, 511, 168 P.3d 955, 963 (2007).

"In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against the accused[.]"  Haw. Const. art. I, § 14.  "[T]he main and essential purpose of confrontation is to secure for the [defendant] the opportunity of cross-examination[.]"  Birano v.

_____

        [2]     We address both Tran's first and second points of error in section (1) below.

State, 143 Hawai'i 163, 183, 426 P.3d 387, 407 (2018) (citation omitted).

Tran does not cite to any case in which the Hawai'i appellate courts have held that, notwithstanding defense counsel's discretion to exercise appropriate trial strategy, a judge must conduct a colloquy to obtain a criminal defendant's express waiver of defendant's right to cross-examine a witness for the prosecution.  Indeed, in addressing this issue, the Hawai'i Supreme Court explained that,

> The right of confrontation is a fundamental constitutional right of the accused.  But, **this right is not absolute and defense counsel can waive certain aspects of the right where such waiver is considered a matter of trial tactics and procedure; in which event the trial court is not required to determine whether defendant had knowingly and voluntarily waived his right.**

State v. Oyama, 64 Haw. 187, 189, 637 P.2d 778, 779-80 (1981) (emphasis added) (citations omitted).

Here, the record reflects that Tran's defense counsel made a tactical decision not to cross-examine CW.[3]  We therefore

---

[3]     It appears that defense counsel's decision not to cross-examine CW before the jury was part of the defense strategy.  The record reflects that defense counsel actively engaged in Tran's defense, raising several objections during the prosecution's direct examination of CW.  Trial proceedings were briefly recessed after CW, who had been removed to a witness room during a bench conference, began crying and "was not able to come back" to the courtroom.  During that recess, as the parties waited for CW to resume her testimony, defense counsel expressed concerns regarding the presence of a comfort dog within the courtroom itself, and of the relocation of the victim witness counselor nearer to the witness stand.  After the prosecutor concluded her direct examination, defense counsel informed the circuit court that he had "several objections that [he thought] would be better handled from counsel table."  Defense counsel subsequently moved for a mistrial, and the circuit court ordered a recess to allow for a hearing on the

(continued . . .)

conclude that the circuit court was not required to conduct a colloquy to determine whether Tran knowingly and intelligently waived his right to confrontation.

With regard to Tran's contention that defense counsel was ineffective for failing to cross-examine CW, we consider whether defense counsel's assistance, when "viewed as a whole, . . . was within the range of competence demanded of attorneys in criminal cases."  State v. DeLeon, 131 Hawai'i 463, 479, 319 P.3d 382, 398 (2014) (citation omitted).  Where a defendant alleges "[s]pecific actions or omissions" that "ha[ve] an obvious tactical basis for benefitting the defendant's case" as error, such allegations "will not be subject to further scrutiny."  Id. (citation omitted); see also State v. Richie, 88 Hawai'i 19, 39, 960 P.2d 1227, 1247 (1998) ("[M]atters presumably within the judgment of counsel, like trial strategy, will rarely be second-guessed by judicial hindsight.") (cleaned up).  Here, the record reflects "an obvious tactical basis" underlying defense counsel's decision to not cross-examine CW.

(2) Tran contends that the circuit court erred by failing to instruct the jury of the State's "burden to prove

---

[3](. . .continued)
voluntariness of statements made by Tran to CW.  During that hearing, defense counsel questioned CW regarding her statement that Tran "seemed stressed" during their interactions.  It was only after this hearing, and upon the resumption of trial, that defense counsel informed the circuit court that "defense has no questions for [CW]."

[Tran's] mens rea as to [CW's] age." We review the propriety of jury instructions de novo, and determine "whether, when read and considered as a whole, the instructions given are prejudicially insufficient, erroneous, inconsistent, or misleading." State v. Kato, 147 Hawaiʻi 478, 490, 465 P.3d 925, 937 (2020) (cleaned up).

Tran was charged pursuant to HRS § 707-733.6. By its express terms, HRS § 707-733.6 prohibits the "continuous sexual assault of a minor" who is "under the age of fourteen years."[4] HRS § 707-733.6 does not require proof that a person charged with the offense have knowledge of the attendant circumstance of the victim's age.

In State v. Buch, the Hawaiʻi Supreme Court clarified that "a defendant is strictly liable with respect to the attendant circumstance of the victim's age in a sexual assault."

---

[4]    HRS § 707-733.6 provides, in relevant part,

(1)   A person commits the offense of continuous sexual assault of a minor under the age of fourteen years if the person:

(a)  Either **resides in the same home with a minor under the age of fourteen years or has recurring access** to the minor; and

(b)  Engages in three or more acts of sexual penetration or sexual contact with the minor over a period of time, **while the minor is under the age of fourteen years**.

(Emphasis added.)

83 Hawai'i 308, 315-16, 926 P.2d 599, 606-07 (1996). The court explained that,

> To further its policy of protecting children from sexual exploitation by adults, the legislature expressly deleted knowledge of the child's age as an element of sexual assault offenses in which the child's age is an attendant circumstance. By doing so, it fairly placed on the adult the risk of mistake with respect to the child's age.

Id. at 320, 926 P.2d at 611 (examining the legislative history of sexual offense statutes in which the child's age is an attendant circumstance).

In sum, while HRS § 707-733.6 requires the State to prove that CW was under the age of fourteen at the time of the continuous sexual assault, it does not require the State to prove that Tran knew CW was under the age of fourteen. We therefore conclude that the circuit court's jury instructions were not prejudicially insufficient, erroneous, inconsistent, or misleading.

(3) Tran contends that the testimonies of Dr. Natarajan and Dr. Bivens were not relevant, and that the circuit court therefore erred by admitting their testimonies. In reviewing the circuit court's determinations as to the relevancy of expert witness testimony,[5] we are mindful that,

---

[5]     The admission of expert witness testimony is governed by Hawaii Rules of Evidence (**HRE**) Rule 702, which states,

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an

(continued . . .)

> One of the touchstones of admissibility o[f] expert testimony under HRE 702 is relevance. In determining the relevancy issue, the trial courts' function is akin to the relevancy analysis adopted in applying HRE Rules 401 (1993) and 402 (1993). Expert testimony must assist the trier of fact by providing a resource for ascertaining truth in relevant areas outside the ken of ordinary laity, and should include knowledge not possessed by the average trier of fact who lacks the expert's skill, experience, training, or education. A trial court's relevancy determination is reviewed under the right/wrong standard.

State v. McDonnell, 141 Hawai'i 280, 291, 409 P.3d 684, 695 (2017) (cleaned up).

Tran contends Dr. Natarajan's testimony was not relevant "because it did not make Tran's abuse more or less probable, nor did it provide a reason to believe or not believe [CW]." Tran's contention lacks merit. Dr. Natarajan testified that, during her examination of CW, she detected a "transection on the hymen" that was "consistent with a penetrating trauma to [the hymen]." Dr. Natarajan's testimony was relevant with regard to the jury's understanding of the medical evidence and its determination of whether Tran sexually assaulted CW. See State v. Irebaria, 55 Haw. 353, 356, 519 P.2d 1246, 1249 (1974) ("The legitimate tendency to establish a controverted fact is

---

[5](. . .continued)
expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise. In determining the issue of assistance to the trier of fact, the court may consider the trustworthiness and validity of the scientific technique or mode of analysis employed by the proffered expert.

all that is required in order that proffered evidence be relevant.") (cleaned up).

Tran contends that Dr. Bivens' testimony regarding delayed reporting[6] was not relevant because the testimony did not "make[] the fact of abuse more or less likely."  Tran's contention lacks merit.  Expert testimony regarding delayed reporting is relevant because it can assist the jury in understanding the behavior of child sex abuse victims, and it is therefore admissible so long as the expert does not make "conclusory opinions that abuse did occur and that the child victim's report of abuse is truthful and believable."  See McDonnell, 141 Hawaiʻi at 291-92, 409 P.3d at 695-96 (citation omitted).  The record reflects that Dr. Bivens did not make such conclusory opinions.

Tran further contends Dr. Bivens' testimony regarding "incest" was inflammatory and not relevant, and that Dr. Bivens' definition of incest[7] was not consistent with HRS § 707-741(1) (2014).  The State called Dr. Bivens to testify about "the interpersonal dynamics for inter-household child sexual abuse."

---

[6]     CW alleged that Tran started to sexually abuse her when she was eight years old, but did not tell her mother until she was thirteen.

[7]     At trial, Dr. Bivens defined incest as follows:

> Incest just refers to sex between an adult and a child when the adult is a household member, could be a blood family relative or a distant relative or a nonrelative, but someone who lives in the family setting with the child.

Dr. Bivens was qualified to testify as an expert in the field of clinical psychology, and he defined the term "incest" within that context. Dr. Bivens explained that: "The majority of child sexual abuse occurs in the child's home. The second most commonplace [sic] is in the molester's home. And obviously in the case of incest, those two places are the same place."[8] We conclude that Dr. Bivens' testimony was relevant in aiding the jury's understanding of the dynamics of child sexual abuse.

(4) Tran contends the circuit court plainly erred when it did not qualify Tran's witness as an expert in front of the jury.[9] The HRE does not preclude the circuit court "from declining to qualify a witness as an expert in front of the jury, so long as the requisite foundation for the witness's testimony is established." State v. Metcalfe, 129 Hawai'i 206, 226, 297 P.3d 1062, 1082 (2013) (cleaned up). Moreover, "[d]etermination by the court that a witness qualifies as an expert is binding upon the trier of fact only as this relates to admissibility of the expert's testimony." HRE Rule 702 cmt. (2014).

---

[8] Dr. Bivens' testimony is relevant within the context of CW's close relationship with Tran. CW testified that her father had lived with Tran and his family for periods of time, and that she would sleep over at Tran's home "for about a week or five days" each month.

[9] Tran did not object when the circuit court decided to qualify Nurse Wristen outside the presence of the jury. "A complete failure to object will waive the point." See State v. Vliet, 91 Hawai'i 288, 299, 983 P.2d 189, 200 (1999) (citations omitted).

On this record, we conclude that the circuit court did not plainly err when it did not qualify Nurse Wristen as an expert witness in the jury's presence.

(5) Tran contends the prosecutor's comments during the State's opening, closing, and rebuttal statements constituted prosecutorial misconduct.  We review allegations of prosecutorial misconduct under the harmless beyond a reasonable doubt standard,

> which requires an examination of the record and a determination of whether there is a reasonable possibility that the error complained of might have contributed to the conviction.  Factors considered are: (1) the nature of the conduct; (2) the promptness of a curative instruction; and (3) the strength or weakness of the evidence against the defendant.

State v. Wakisaka, 102 Hawai'i 504, 513, 78 P.3d 317, 326 (2003) (cleaned up).

We first address Tran's contention that the prosecutor's opening statement presented an improper "factual recitation of personal opinion."[10]  In doing so, we observe that

---

[10]     Tran challenges the following statements made during the prosecutor's opening statement:

> [CW] was 8 years old. . . .  When [the CW] was 8, a man whom she loved and trusted was touching her and groping her, and she didn't know what to do.  He was touching her private parts, her genitalia, with his hand.  The first time it was outside of her clothes.  **She hoped that her daddy would walk through the front door.**  She was confused.  **But her daddy did not walk through the front door for a long time**, and so [CW] just laid there and she took it.
>
> **The man who did that to [CW] is her dad's best friend.**  He's seated next to defense counsel.  **He is [Tran].** . . .

(continued . . .)

Tran has not demonstrated the prosecutor's remarks were "speculative," nor that they "refer[red] to things the evidence

---

[10](. . .continued)

    . . . .

    From the time that [CW] was 8 to 12 years of age, approximately from January of 2015 to January 31st of two thousand -- of 2020, **[Tran] repeatedly sexually molested her.** It occurred in the Pacific Heights homes that [Tran] either shared with her father or in the home that he lived in right next door to her father whenever [CW] would visit. **[Tran] would place his hand on [CW's] chest or on her breast when she started developing breasts. [Tran] would rub his hand on her breast over the clothes and skin to skin. He would place his mouth on her breast, licking her breast. . . .**

    **[Tran] asked her if she wanted to have sex, and when [CW] was 8 years old, she said yes.** She didn't even know what sex was. [Tran] placed his mouth on what she calls her private part, in other words her genitalia. [Tran] licked her genitalia, which made her feel very uncomfortable. She was scared. [Tran] also inserted his finger into her vagina, into what she calls her private part, her genitals, and it hurt her, it caused her pain. . . .

    . . . .

    **[CW] wanted to tell.** She was afraid to tell. **She tried to tell her mom on more than one occasion, and she finally got the guts to tell her mother** in May of 2020, on Mother's Day. . . .

    The doctor who performed the examination is highly qualified. . . . The doctor examined [CW] and she found that [CW] had genital trauma, in other words[,] an injury consistent with sexual penetration with either a finger or with a penis. . . . **It's called a transection to the hymen, in other words[,] a deep, healed tear to the hymen that's consistent with sexual penetration.**

    At the conclusion of this case, the State will ask that you find [Tran] guilty of the crime of Continuous Sexual Assault of a Minor Under the Age of 14. [Tran] was not related to [CW] in any way. **The State will ask that you find him guilty as charged because he violated [CW].**

(Emphasis added.)

[would] not (and did not) show." See State v. Sanchez, 82 Hawai'i 517, 528, 923 P.2d 934, 945 (App. 1996) ("The State should only refer in the opening statement to evidence that it has a genuine good-faith belief will be produced at trial.") (cleaned up).

After careful review of the record, we also determine that the prosecutor's opening remarks do not appear to express her personal views as to Tran's guilt. See State v. Barrios, 139 Hawai'i 321, 329, 389 P.3d 916, 924 (2016) ("[I]t is generally recognized under Hawai'i case law that prosecutors are bound to refrain from expressing their personal views as to a defendant's guilt or the credibility of witnesses.") (cleaned up).

We next address Tran's contention that the prosecutor's use of "we" and "us," during the State's closing and rebuttal arguments, constituted prosecutorial misconduct. "A prosecutor is allowed wide latitude in discussing the evidence during closing argument . . . [and] may state, discuss, and comment on the evidence as well as draw all reasonable inferences from the evidence." State v. Pasene, 144 Hawai'i 339, 367, 439 P.3d 864, 892 (2019) (cleaned up). A prosecutor may not, however, use inclusive pronouns in an attempt to "impl[y] that the jury and the State ha[ve] similar interests and [are]

13

working together" to convict the defendant. <u>State v. Conroy</u>, 148 Hawaiʻi 194, 202, 468 P.3d 208, 216 (2020).

The record reflects that the prosecutor used the words "we" and "us" during her closing and rebuttal arguments in general reference to evidence admitted (e.g., "we have . . . "), or arguments made by the State (e.g., "we spoke about . . . ") at trial.[11] Unlike in <u>Conroy</u>, it does not appear that "we" and

---

[11]     The prosecutor used "we" and "us" in the following context:

> And **we** have little [CW] trying to protect herself in a way that a child -- only a child could. **We** have the unicorn onesie. And she told **us** that that was her way of trying to keep from being molested by [Tran]. . . .
>
> . . . .
>
> At the beginning of this case, **we** spoke about child witnesses. If the only witness was a child and believed -- and you believed that child, that you could convict, you could find the defendant guilty.
>
> . . . And **we** know that child molestation usually happens behind closed doors[.]
>
> . . . .
>
> Members of the jury, although **we** spoke so much about a single witness, this is a case that has even more than the testimony of a single witness. . . .
>
> . . . **We** have the testimony of [Dr. Natarajan], who is very qualified. . . .
>
> . . . .
>
> What does [Dr. Bivens] tell **us?** He tells **us** that it's not the stranger who comes out of the bushes. . . .
>
> . . . .
>
> . . . [CW's] mom would tell **us** that ages 10 and 11, that [CW] started acting kind of strangely[.]

(continued . . .)

"us" were used in the instant case to create an "implication of unity" or "the suggestion of an alliance between the State and the jury" against Tran.  See id. at 202-03, 468 P.3d at 216-17. We therefore conclude that the prosecutor's usage of "we" and "us" was not improper when considered within the context of the

---

[11](. . .continued)

> . . .  [CW's dad] would tell **us** [CW] had the run of the house.  [CW's dad] told **us** that [the] room was empty sometimes because [Tran's] mother had a house somewhere else. . . .
>
>         . . . .
>
> . . .  That [Tran] during the same time period, January 1, 2015, to January 31, 2020 -- that he intentionally or knowingly resided or had recurring access -- that he resided in the same house as [CW] or had recurring access to her.  **We** can check that off. . . .
>
>         . . . .
>
> . . .  And **we're** going to talk about different ways that [CW] testified to each of these elements.
>
>         . . . .
>
> . . .  **We** have [Tran's] sister, who read the police reports in this case, who read [CW's] transcript.
>
>         . . . .
>
> . . .  And lo and behold, **we** have the sister testifying that she kicked [CW] out on Mother's Day. . . .
>
>         . . . .
>
> . . .  **We** have the brother saying that [Tran] worked 24/7 or worked 7 days a week during the middle of the night. . . .
>
>         . . . .
>
> . . .  Well, the defense's own witness . . . tells **us** the first line out of his mouth was, well, if my mother came -- was there.  So that tells **us** that sometimes his mom slept over somewhere else.

(Emphasis added.)

prosecutor's statements, the evidence presented, and the reasonable inferences that a jury could draw from the evidence. See State v. Brown, 157 Hawaiʻi 354, 380-81, 577 P.3d 1045, 1071-72 (2025) (determining that the prosecutor's use of "we know," during closing and rebuttal arguments, "were permissible turns of phrase uttered in sentences drawing reasonable inferences from the trial evidence and did not constitute prosecutorial misconduct" when considering the facts and circumstances of the case).

We finally consider Tran's contention that the prosecutor, during rebuttal argument, improperly stated that "The State asks that you return a **just** verdict in this case and that you find [Tran] guilty as charged[.]" (Emphasis added.) Tran did not object to the prosecutor's statement. Nevertheless, the circuit court sua sponte struck the word "just" from the record.

The prosecutor's reference to a "just" verdict was improper because it "diverted the jury from its duty to decide the case on the evidence." See Conroy, 148 Hawaiʻi at 202, 468 P.3d at 216 (cleaned up). We conclude, however, that the circuit court's prompt curative action rendered the alleged prosecutorial misconduct harmless beyond a reasonable doubt. See Wakisaka, 102 Hawaiʻi at 513, 78 P.3d at 326.

## II.  State's Point of Error

Pursuant to our conclusions in part I above, the State's cross-appeal is moot.  See State v. Okuda, 71 Haw. 434, 456, 795 P.2d 1, 13 (1990); State v. Cullen, 86 Hawaiʻi 1, 13, 946 P.2d 955, 967 (1997).

For the foregoing reasons, we affirm the Judgment.

DATED: Honolulu, Hawaiʻi, January 28, 2026.

On the briefs:

Thomas M. Otake,
for Defendant-Appellant/
Cross-Appellee.

Daniel A.J. Hugo,
Deputy Prosecuting Attorney,
City and County of Honolulu
for Plaintiff-Appellee/
Cross-Appellant.

/s/ Katherine G. Leonard
Presiding Judge

/s/ Clyde J. Wadsworth
Associate Judge

/s/ Kimberly T. Guidry
Associate Judge